United States District Court

EASTERN DISTRICT OF CALIFORNIA



**FILED**

DEC 2 1 2012

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| MATTHEW ROBERTS | ) | 2 1 2 - MJ - 0 3 4 8 |
| | ) | |
| | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of <u>August 20, 2012</u> in the county of <u>Sacramento</u>, in the Eastern District of California,
the defendant(s) violated:

*Code Section*
18 U.S.C. § 2319

*Offense Description*
Criminal infringement of a copyright

This criminal complaint is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant Signature*

JOHN W. OGDEN, SPECIAL AGENT
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/20/2012

City and state: El Dorado Hills CA

_____
*Judge's signature*

Carolyn K. Delaney
*Printed name and title*
U.S. Magistrate Judge

## AFFIDAVIT IN SUPPORT OF CRIMINAL
## COMPLAINT AND SEARCH WARRANT

I, **SA JOHN W. OGDEN**, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of a criminal complaint against MATTHEW
ROBERTS, 5396 Calabria Way, Sacramento, CA 95835, DOB January 3, 1986, and an
application for a warrant to search premises and an iPhone, further described in Attachments A-1
and A-2, for certain things particularly described in Attachment B. There is probable cause to
believe that fruits, instrumentalities, and evidence of violations of 18 U.S.C. §§ 701 (Official
badges, identification cards, and other insignia), 912 (False personation of an officer or employee
of the United States), 922(g) (Felon in Possession of a Firearm), 2318 (Trafficking in Counterfeit
labels, illicit labels, or counterfeit documentation or packaging), 2319 (Criminal Copyright
Infringement),, as described in Attachment B, will be found at the noted premises described in
Attachment A.

2.      I am a Special Agent with the FBI, and have been for approximately three years.
I am currently assigned to the Sacramento Division of the FBI, Violent Crime Squad, where I
investigate various federal crimes.  Since July 2009, I have been assigned to investigate
computer software and intellectual property rights violations of federal law.  I have gained
expertise in the conduct of such investigations through training courses and everyday
investigative work.

3.      This affidavit is intended to show only that there is sufficient probable cause for
the requested process and does not set forth all of my knowledge about this matter.  I acquired
the following facts through personal observation as well as those of other agents and officers.

## CASE BACKGROUND AND INTRODUCTION

4.      On December 13, 2012, a citizen ("Witness 1"), called the FBI to report the
following facts that spurred further investigation.  On or about December 12, 2012, Witness 1
contacted a seller on craigslist.org by phone at telephone number (931)674-1337 regarding
Microsoft Office computer software for sale.  The seller identified himself as Shawn McCoy and
offered four copies of Microsoft Office for $95.00 each.  Witness 1 met with the seller and
purchase a computer disc purported to contain Microsoft Office Professional 2010 for $380.00.
The seller told Witness 1 that the software was licensed to be installed on four computers but
only one (1) physical disc was provided to Witness 1.  When Witness 1 inquired about the
legitimacy of the software product and support if there were any issues, the seller told Witness 1
not to worry, he was an FBI Agent, and produced an item described as a wallet with a badge and
photo identification which had a photo of the seller, the letters "FBI", and other text.  At the time
of the meeting, the seller drove a black Mercedes sedan with California license plate number
5EQB640.  When the seller exited his vehicle, Witness 1 observed a pit bull dog in the rear of
the vehicle and noted that the seller was wearing a "shoulder style" gun holster with what
appeared to be a handgun with extended barrel, inserted in the holster.

5.      Witness 1 has a substantial and recent criminal history involving multiple,
separate convictions for violent crime, property crime, and fraud.  He has impersonated a peace

2

officer. He has been to state prison and is currently on parole. At the time he was providing

information to the FBI, Witness 1 was not asked about his criminal history and he did not

volunteer it. I learned of it subsequently through a database search. Witness 1 provided me with

his true identifiers (name, date of birth, and social security number). Witness 1 has not asked for

and has not been offered any consideration for the information provided in this matter.

      6.      Following up on Witness 1's information, I reviewed Department of Motor

Vehicle records for California license plate number 5EQB640 which indicated a 2003 Mercedes

sedan, with registered owner Matthew S Roberts, registered owner address 5396 Calabria Way,

Sacramento, CA 95835 and VIN number WDBUF76J73A280733.

      7.      Craigslist.org is a publicly available website that allows people to post classified

advertisements for goods and services. A computing device such as a computer or smart phone

is needed in order to create or post advertisements to the Craigslist.org website.

      8.      On or about December 13, 2012, Witness 1 contacted the seller via text message

at (931)674-1337. I reviewed the text messages on Witness 1's telephone which were dated

December 13, 2012. The messages from (931)674-1337 made reference to "MS Office

Professional Plus 2010", that if it wasn't working it was due to the fact that "a 64 bit operating

system" was required. Further, the messages from (931)674-1337 made specific references to

pictures and items posted on Witness 1's Facebook page.

      9.      On or about December 19, 2012, I met with Witness 1 and recovered a copy a

DVD case with enclosed disc which Witness 1 said was purchased from the seller who identified

himself as Shawn McCoy with telephone number (931)674-1337. The software key, used to

3

install the software was printed on a thick piece of paper which was inserted into the DVD case. The case packaging itself is printed in a way that at least superficially appears to be Microsoft packaging. But this method of recording and attaching the software key is inconsistent/how I know authentic copies of Microsoft Office are packaged. The disc itself was a recordable optical disc. I know this because a recordable ("burned") disc has a purple colored die layer which changes coloration when data is written to it. I know from my training and experience that a legitimate Microsoft Office disc would be read-only and would appear silver colored and have no variation in coloration. Using a computer, I examined the electronic contents of the disc, and it appeared to be Microsoft Office software. In addition, Witness 1 indicated that he/she recalled what the seller looked like and believed he/she would recognize the seller if he/she saw him again. I administered a photographic lineup to Witness 1 using the Federal Bureau of Investigation Photographic Lineup Admonition. Witness 1 identified a photo of Matthew Sean Roberts in the lineup and indicated a high degree of certainty in his/her selection. I reviewed California Department of Motor Vehicle records for Matthew Sean Roberts which indicated a date of birth of January 3, 1986, a driver license number of F4795618, and an address of 5396 Calabria, Sacramento, CA 95835.

**Residence of Matthew Roberts**

10.    In addition to the information above, on or about December 20, 2012, I reviewed information from the electrical utility company, SMUD, which indicated that Matthew S Roberts currently had service at the address 5396 Calabria Way, Sacramento, CA 95835 and had such service since September 22, 2010. In addition, on or about December 19, 2012, I reviewed service call records from the Sacramento Police Department for the address 5396 Calabria Way,

4

Sacramento, CA 95835. One such record was dated November 5, 2012 with complainant Matt

Roberts. Roberts indicated that his roommate was moving out and that the roommate had

threatened to beat Roberts up. A female referenced in the report indicated that Roberts had a pit

bull dog at the residence.

## Gmail Email Account for Matthew Roberts

11.     On or about December 18, 2012, I made contact via email, in an online under

cover capacity, with a seller on craigslist, for an advertisement titled "Adobe Master Collection

CS5 - $180 (Sacramento)", with telephone number (931)674-1337 and posting ID 3453325614.

I asked the seller if the CS5 product was still available and received a response back from email

address Sean Owens <sacbizsoft@gmail.com> in which the seller indicated that the software

was still available. The seller confirmed that I could make contact at telephone number

(931)674-1337 to arrange the purchase.

## Felony conviction of Matthew Roberts

12.     On or about December 19, 2012, I contacted the Brevard County Clerk in Florida

to confirm that Matthew Roberts was convicted of a Felony for Grand Theft. The conviction

was confirmed verbally and I was directed to the Brevard County Clerk records, publicly

available on the Internet,which indicated that Matthew Sean Roberts, with date of birth January

3, 1986, received a felony conviction for Grand Theft, 3rd Degree, on June 6, 2005. In addition, I

noted a misdemeanor conviction for Carrying a Concealed Weapon and three additional felony

convictions for violation of probation and state community control.

## INVESTIGATION AND ARREST ON DECEMBER 20, 2012

5

13. On December 20, 2012, an undercover officer (UC) called the number in the Craigslist ad, (931) 674-1337, and arranged to buy two copies of Adobe CS5, software for creating and editing digital media. The UC and the seller agreed on a price of $180 per copy and agreed to meet at 3:00 p.m. at a park near the subject premises. FBI agents established surveillance at the buy location. At about 3:00 p.m., the MATTHEW ROBERTS drove up in the Mercedes described by Witness 1. Outside their cars, ROBERTS and the UC consummated the transaction upon which they had agreed. ROBERTS then got back in his Mercedes and drove away, at which time a marked unit of the Sacramento Police Department conducted a vehicle stop and ROBERTS was arrested.

14. At the time officers arrested ROBERTS, they seized from his Mercedes the iPhone described in Attachment A-2. The iPhone was on the center console and ROBERTS was the only occupant of the vehicle.

15. An agent with expertise in computer examinations used a computer to examine the contents of the disc that ROBERTS gave the UC. It appeared to have software files consistent with the printed label on the disc – Adobe CS5. It was a burned disc with a purple tint, which is evidence that it was counterfeit software as explained above. I called Adobe this morning and a representative told me that an authorized copy of Adobe CS5 retails for $2,599. They also confirmed that Adobe never sells authorized software on a burned disc.

16. Simultaneous with the controlled purchase, agents were surveilling the subject premises. Prior to the buy, the agents observed the garage door open and saw Roberts get into the Mercedes and drive away. Agents surveilled him all the way to the buy location.

6

17.     After the buy, agents on foot approached the residence. While standing outside the closed front door, they observed a pit bull come towards them and stand in front of a window adjacent to the front door.

18.     As I write, agents have made contact with another resident of the premises and have frozen the premises in anticipation of a search warrant.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

19.     This application seeks permission to search for and seize evidence of the crimes described above stored on computers and electronic/digital devices (collectively, "digital devices"), as well as any digital devices that constitute instrumentalities of the crimes.

20.     Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices, I know that data in digital form can be stored on a variety of systems, storage devices, or media including hard disk drives, floppy disks, compact disks, magnetic tapes, flash drives, and memory chips. Some of these devices can be smaller than a thumbnail and can take several forms, including thumb drives, secure digital media used in phones and cameras, personal music devices, and similar items.

21.     Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices, I know that computers and digital devices are often used to store information, very much the same way paper, ledgers, files and file cabinets are used to store information. I know that it is common today for businesses to utilize computers to conduct their business and to store information

7

related thereto. I also know that it is common for individuals to have personal computers and to use these computers to conduct their personal affairs, their business affairs, and to store information related thereto. I know based on my training and experience, including prior investigations specifically related to the investigation of trafficking in counterfeit goods, that subjects who are engaged in that offense commonly store information related to their activities on computers and digital devices.

## Removal of Data Storage Devices For Review In A Laboratory Setting May Be Required

22.     Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices, I know that a forensic image is an exact physical copy of a data storage device. A forensic image captures all data on the subject media without viewing or changing the data in any way. Absent unusual circumstances, it is essential that a forensic image be obtained prior to conducting any search of data for information subject to seizure pursuant to the warrant. I also know that during the search of the premises it is not always possible to create a forensic image of or search digital devices or media for data. I also know that it is frequently necessary to remove digital devices or media for later laboratory evaluation off-site under controlled circumstances. This is true for a number of reasons, including the following:

a.     Searching digital devices can be a highly technical process that requires specific expertise and specialized equipment. Because there are so many different types of digital devices and software in use today, it is difficult to anticipate all of the necessary technical manuals, specialized equipment, and specific expertise necessary to conduct a

8

thorough search of the media to ensure that the data will be preserved and evaluated in a useful manner.

      b.     Searching digital devices can require the use of precise, scientific procedures designed to maintain the integrity of the evidence. The recovery of such data may require the use of special software and procedures, such as those used in a law enforcement laboratory.

      c.     The volume of data stored on many digital devices is typically so large that it will be highly impractical to search for data during the execution of the physical search of the premises. Storage devices capable of storing 500 gigabytes of data are now commonplace in desktop computers. It can take several hours, or even days, to image a single hard drive. The larger the drive, the longer it takes. Depending upon the number and size of the devices, the length of time that agents must remain onsite to image and examine digital devices can become impractical.

      d.     Since digital data may be vulnerable to inadvertent modification or destruction, a controlled environment, such as a law enforcement laboratory, may be essential to conduct a complete and accurate analysis of the digital devices from which the data will be extracted. Software used in a laboratory setting can often reveal the true nature of data. Moreover, a computer forensic reviewer needs a substantial amount of time to extract and sort through data that is concealed or encrypted to determine whether it is evidence, contraband, or an instrumentality of a crime.

9

e.      Analyzing the contents of a computer or other electronic storage device,

even without significant technical difficulties, can be very challenging, and a variety of

search and analytical methods must be used. For example, searching by keywords, which

is a limited text-based search, often yields thousands of hits, each of which must be

reviewed in its context by the examiner to determine whether the data is within the scope

of the warrant. Merely finding a relevant hit does not end the review process. The

computer may have stored information about the data at issue which may not be

searchable text, such as: who created it; when and how it was created, downloaded, or

copied; when it was last accessed; when it was last modified; when it was last printed;

and when it was deleted. The relevance of this kind of data is often contextual.

Furthermore, many common email, database, and spreadsheet applications do not store

data as searchable text, thereby necessitating additional search procedures. To determine

who created, modified, copied, downloaded, transferred, communicated about, deleted, or

printed data requires a search of events that occurred on the computer in the time periods

surrounding activity regarding the relevant data. Information about which users logged

in, whether users shared passwords, whether a computer was connected to other

computers or networks, and whether the users accessed or used other programs or

services in the relevant time period, can help determine who was sitting at the keyboard.

f.      Searching digital devices can require the use of precise, scientific

procedures designed to recover latent data. The recovery of such data may require the

use of special software and procedures. Data that represents electronic files or remnants

of such files can be recovered months or even years after it has been downloaded onto a

10

hard drive, deleted, or viewed via the Internet. Even when such files have been deleted, data can be recovered months or years later using readily available forensic tools. Normally, when a person deletes a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in space on the hard drive or other storage media that is not allocated to an active file. In addition, a computer's operating system may keep a record of deleted data in a swap or recovery file or in a program specifically designed to restore the computer's settings in the event of a system failure.

23.     This warrant seeks authority to seize contextual data, that is, evidence of how a digital device has been used, what it has been used for and who has used it. It can be very important in criminal cases to seek "attribution" data so that an event or communication can be associated with a person. Based upon my training and experience, and information related to me by agents and others involved in the forensic examination of computers and digital devices, this authority is sought for a number of reasons:

> a. In some instances, the computer "writes" to storage media without the specific knowledge or permission of the user. Generally, data or files that have been received via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to such data or files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve artifacts of electronic activity from a hard drive depends less on when the file was

11

downloaded or viewed than on a particular user's operating system, storage capacity, and computer usage. Logs of access to websites, file management/transfer programs, firewall permissions, and other data assist the examiner and investigators in creating a "picture" of what the computer was doing and how it was being used during the relevant time in question. Given the interrelationships of the data to various parts of the computer's operation, this information cannot be easily segregated.

b. Digital data on the hard drive that is not currently associated with any file may reveal evidence of a file that was once on the hard drive but has since been deleted or edited, or it could reveal a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave digital data on the hard drive that show what tasks and processes on the computer were recently used. Web browsers, email programs, and chat programs store configuration data on the hard drive that can reveal information such as online nicknames and passwords. Operating systems can record additional data, such as the attachment of peripherals, the attachment of USB flash storage devices, and times the computer was in use. Computer file systems can record data about the dates files were created and the sequence in which they were created. This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations (or on other devices).

12

c. Further, evidence of how a digital device has been used, what it has been used for, and who has used it, may be learned from the absence of particular data on a digital device. Specifically, the lack of computer security software, virus protection, malicious software, evidence of remote control by another computer system, or other programs or software may assist in identifying the user indirectly and may provide evidence excluding other causes for the presence or absence of the items sought by this application. Additionally, since computer drives may store artifacts from the installation of software that is no longer active, evidence of the historical presence of the kind of software and data described may have special significance in establishing timelines of usage, confirming the identification of certain users, establishing a point of reference for usage and, in some cases, assisting in the identification of certain users. This data can be evidence of a crime, can indicate the identity of the user of the digital device, or can point toward the existence of evidence in other locations. Evidence of the absence of particular data on the drive is not generally capable of being segregated from the rest of the data on the drive.

## Computer Search Procedure

24. In searching for data capable of being read, stored, or interpreted by a computer or storage device, law enforcement personnel executing the search warrant will employ the following procedure:

a. *On-site search, if practicable.* Law enforcement officers trained in computer forensics (hereafter, "computer personnel"), if present, may be able to

13

determine if digital devices can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve data on the devices and conduct such a search if deemed practicable. Any device searched on-site will be seized if it contains any data falling within the list of items to be seized as set forth in the warrant and in Attachment B.

b.      *On-site imaging, if practicable*. If a digital device cannot be searched on-site as described above, the computer personnel, if present, will determine whether the device can be imaged on-site in a reasonable amount of time without jeopardizing the ability to preserve the data and conduct such imaging if deemed practicable.

c.      *Seizure of digital devices for off-site imaging and search*. If no computer personnel are present at the execution of the search warrant, or if they determine that a digital device cannot be searched or imaged on-site in a reasonable amount of time and without jeopardizing the ability to preserve data, the digital device will be seized and transported to an appropriate law enforcement laboratory for review.

d.      Law enforcement personnel (potentially including, but not necessarily limited to, computer personnel) will examine the digital device to determine if it contains any data that falls within the list of items to be seized as set forth in the warrant and in Attachment B.

e.      Law enforcement personnel will use procedures designed to identify items to be seized under the warrant. These procedures may include, without limitation, the use of a "hash value" library to exclude normal operating system files that do not need to be

14

searched. In addition, law enforcement personnel may search for and attempt to recover deleted, hidden, or encrypted data to determine whether the data falls within the list of items to be seized under the warrant.

f.      If the original digital device was seized, law enforcement personnel will perform an initial search of the original digital device within a reasonable amount of time not to exceed 120 days from the date of execution of the warrant. If, after conducting the initial search, law enforcement personnel determine that an original digital device contains any data falling within the list of items to be seized pursuant to this warrant, the government will retain the original digital device to, among other things, litigate the admissibility/authenticity of the seized items at trial, ensure the integrity of the copies, ensure the adequacy of chain of custody, and resolve any issues that potentially might be raised regarding changed conditions of the evidence. If the government needs additional time to determine whether an original digital device contains any data falling within the list of items to be seized pursuant to this warrant, it may seek an extension of the time period from the Court within the original 120-day period from the date of execution of the warrant.

g.      If an original digital device does not contain any data falling within the list of items to be seized pursuant to this warrant, the government will: return that original digital device to its owner within a reasonable period of time if it can be lawfully possessed; seal any image previously made of the device; and not review the sealed image absent further authorization from the Court.

15

## Data to be Seized

25.     Based upon my training and experience, and information related to me by agents

and others involved in the forensic examination of computers and digital devices, I know that, in

order to search for data that is capable of being read or interpreted by a computer, law

enforcement personnel will need to seize, image, copy, and/or search the following items, subject

to the procedures set forth herein:

   a.     Any computer equipment or digital devices that are capable of being used

to commit or further the crimes outlined above, or to create, access, or store evidence of

such crimes, as set forth in Attachment B;

   b.     Any computer equipment or digital devices used to facilitate the

transmission, creation, display, encoding, or storage of data, including word processing

equipment, modems, docking stations, monitors, printers, plotters, encryption devices,

and optical scanners that are capable of being used to commit or further the crimes

outlined above, or to create, access, process, or store evidence of such crimes, as set forth

in Attachment B;

   c.     Any magnetic, electronic, or optical storage device capable of storing data,

such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical

disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic

dialers, electronic notebooks, personal digital assistants, and cell phones capable of being

used to commit or further the crimes outlined above, or to create, access, or store

evidence of such crimes, as set forth in Attachment B;

16

d. Any documentation, operating logs, and reference manuals regarding the operation of the computer equipment, storage devices, or software;

e. Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices, or data to be searched;

f. Any physical keys, encryption devices, dongles, or similar physical items which are necessary to gain access to the computer equipment, storage devices, or data;

g. Any passwords, password files, test keys, encryption codes, or other information necessary to access the computer equipment, storage devices, or data; and

h. All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show the actual user(s) of the computers or digital devices during any time period in which the device was used to commit the crimes referenced above, including the web browser's history; temporary Internet files; cookies, bookmarked, or favorite web pages; email addresses used from the computer; MAC IDs and/or Internet Protocol addresses used by the computer; email, instant messages, and other electronic communications; address books; contact lists; records of social networking and online service usage; and software that would allow others to control the digital device such as viruses, Trojan horses, and other forms of malicious software (or alternatively, the lack of software that would allow others to control the digital device).

17

i.      All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the computer or digital device.

j.      All records, documents, programs, applications, or materials created, modified, or stored in any form, including in digital form, on any computer or digital device, that show contextual information necessary to understand the evidence, contraband, fruits, or instrumentalities described in this attachment.

## **Retention of Image**

26.     The government will retain a forensic image of each digital device subjected to analysis for a number of reasons, including proving the authenticity of evidence to be used at trial; responding to any potential questions regarding the corruption of data; establishing the chain of custody of data; refuting any potential claims of fabrication, tampering, or destruction with/of data; and addressing potential exculpatory evidence claims where, for example, a defendant claims that the government avoided its obligations by destroying data or returning it to a third party.

## **Inventory and Return**

27.     With respect to the seizure of electronic storage media or the seizure or imaging of electronically stored information, the search warrant return to the Court will describe the physical storage media that were seized or imaged.

## CONCLUSION

28.     I submit that this affidavit supports probable cause for a warrant to search the

premises described in Attachment A and seize the items described in Attachment B.

## NO REQUEST FOR SEALING

29.     The subject has been arrested and agents have frozen the search location. The

affiant perceives no need to seal the affidavit.


SA JOHN W. OGDEN
Special Agent
Federal Bureau of Investigation


Approved as to form,

MATTHEW SEGAL, AUSA


Subscribed and sworn to before me
on __12/20__ , 2012:


HON CAROLYN K. DELANEY
United States Magistrate Judge

19

## ATTACHMENT A-1

**5396 Calabria Way, Sacramento, California 95835**

The structure is further described as a two story residence with stucco light color stucco exterior and tile roof with the house number 5396 marked next to the garage door.



ANY AND ALL locked or closed outbuilding, grounds, garages, sheds, carports, storage facilities and containers such as but not limited to safes, vaults, file cabinets, drawers, luggage, briefcases, valises, boxes, jewelry boxes, cans, bags, purses, trash cans, and any other locked or closed hiding places located at and allotted to the above listed address.

ANY AND ALL vehicles located at the SUBJECT PREMISES, that are owned or under the immediate control of the occupants of such premises, at the time of the search warrant, evidenced by the possession of keys, maintenance paperwork, title, insurance papers, or registration for such vehicle in the name of the occupants.

## **ATTACHMENT A-2**

One black Apple iPhone bearing model number A1332, which was seized on the afternoon of December 20, 2012 from a black Mercedes sedan, California license plate number 5EQB640, driven by Matthew Roberts.

## ATTACHMENT B

### ITEMS TO BE SEIZED

1. All fruits, instrumentalities, and evidence of violation of 18 U.S.C. §§ 701 (Official badges, identification cards, and other insignia), 912 (False personation of an officer or employee of the United States), 922(g) (Felon in Possession of a Firearm), 2318 (Trafficking in Counterfeit labels, illicit labels, or counterfeit documentation or packaging), 2319 (Criminal Copyright Infringement)records and information relating to violations of 18 U.S.C. §§ 2318 (trafficking in counterfeit labels, illicit labels, or counterfeit documentation or packaging) and 2319 (criminal infringement of copyright), including but not limited to:

### EVIDENCE RELATED TO PACKAGING AND INFRINGEMENT

2. Lists of customers and related identifying information;

3. Advertisements or other marketing materials;

4. Types, units, amounts, and prices of items trafficked as well as dates, places, and dollar values of specific transactions;

5. Any records related to sources of infringing items to include but not limited to invoices, order forms, contact lists, wire transfer receipts (including names, addresses, phone numbers, email addresses, domain names, or any other identifying information);

6. Any financial records to include but not limited to bank records, receipts, ledgers, checks, credit card statements, account information, and other financial records;

7. Any label, mark, documentation, paraphernalia or packaging that appears to be designed to be affixed to, enclosed in, or to accompany any product;

8. Any tool used to assemble or otherwise manufacture infringing goods.

9. Any email messages or other electronic messaging records that relate to the acquisition, sale and/or distribution of infringing goods;

10. Records evidencing occupancy or ownership of the premises described above, including utility/telephone bills or addressed correspondence;

11. Cash or other monetary instruments in excess of $500;

## EVIDENCE RELATED TO  FIREARMS, BADGES, AND FALSE PERSONATION

12. Any firearm, ammunition, spent shell casings, holsters, gun case, or other item associated with firearms such as cleaning kits or ammunition magazines;

13. Any photograph of ROBERTS and a firearm or appearing to be a law enforcement officer;

14. Any badge, identification card, apparel, or other item commonly used by law enforcement officers to identify themselves as such;

15. Any equipment commonly associated with law enforcement officers, such as handcuffs, ballistic vests, batons, surveillance equipment, chemical spray, or a Taser.

## SPECIAL NOTE REGARDING ELECTRONIC EVIDENCE

16. For any computer hard drive, cellular telephone/hybrid, smart phone, or other electronic media (hereinafter "COMPUTER") found to contain information otherwise called for by this warrant:

2

a)      Evidence of who used, owned, or controlled the COMPUTER at the time the items described in this warrant were created, edited, viewed, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history, to include bookmarked sites;

b)      Evidence of the attachment to the COMPUTER of other storage devices, disks, CD-ROMS, or similar containers for electronic evidence;

c)      Evidence of the times the COMPUTER was used;

d)      Passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

e)      Contents of volatile memory related to computers and other digital communication devices that would tend to show the current and recent use of the computer, use of encryption, use of other communications devices, routes of Internet and other digital communications traffic and passwords, encryption keys or other dynamic details necessary to preserve the true state of running evidence;

f)      Documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER; and

g)      Contextual information necessary to understand the evidence described in this attachment; and

3

h)      If computers or other digital devices are found in a running state, evidence may be acquired from the devices prior to shutting the devices off.